McBride, judge.
This suit sounds in tort. Plaintiff claims a large amount for physical injuries and special damages growing out of a collision between two automotive vehicles which occurred on State Highway 23 a short dis *288 tance below Belle Chasse, Parish of Plaquemines, about 9 o’clock a. m., on March 26, 1958. Impleaded as defendants in solido are United Gas Pipe Line Company and its liability insurer.
Both vehicles involved in the accident were moving in a southerly direction. One was a large flat bed winch truck owned by United Gas Pipe Line Company, to which was coupled a trailer with wheels in the rear, which was conveying certain large mechanical equipment. Said defendant’s employee was in charge thereof. The other vehicle was a 1953 Dodge automobile owned and driven by plaintiff. Plaintiff charges the accident happened because the driver of the truck suddenly and negligently turned left without warning. Negligence is denied by defendants.
According to plaintiff’s testimony, he had been traveling at a moderate rate of speed behind the truck and trailer which were moving at a slower rate, and when he caught up with them, after sounding his horn, he accelerated his speed to 35 miles per hour and proceeded to pass on the left. He states the accident took place when he was abreast of the truck. He maintains the truck “pulled over” on him without warning or signal in the process of making a left-hand turn. The right front part of plaintiff’s car was demolished and he was rendered unconscious as a result of the impact.
The truck driver admits the turning maneuver attributed to him. His intention was to enter a private shell-surfaced side roadway to his left. His version is that when some 300 feet from the side road, he switched on his flashing left turn indicator light which was in working order. Two passengers in the truck (both employees of United Gas Pipe Line Company) also testified to the switching on of the indicator light and its good condition.
The driver went on to say that when he was 150 feet removed from the side road, he looked into the rearview mirror and saw plaintiff’s car about 1,000 feet to the rear, and believing he had ample time to negotiate the turn safely, he proceeded to do so and the accident happened when his truck had fully entered upon the private road and was entirely off the highway. He claims the rear end of the trailer was then in the middle of the northbound lane and was run into by plaintiff’s car, and in this statement he is corroborated by his two fellow employees.
There was also- testimony to- the effect that there was an odor of liquor about plaintiff after the accident. Defendants also brought out the fact that for 11 to 12 hours previous to the accident plaintiff had actively engaged in his occupation as taxicab driver.
After hearing the testimony of the eyewitnesses, which is in irreconcilable conflict, the trial judge believed plaintiff should prevail and judgment was rendered in his favor against defendants for $3,101.42, and they appealed. Plaintiff in an answer to the appeal prays that the amount of the judgment be increased to $5,000.
The facts pertaining to the accident and the responsibility therefor are the initial questions posed by this appeal, and in the absence of exceptional features and in view of the findings of the trial judge, we would be very reluctant to interfere with his conclusions. It is true defendants had the benefit of the testimony of three eyewitnesses while plaintiff could rely only on his own testimony, but sight cannot be lost of the circumstance that the three defense witnesses were all employees of United Gas Pipe Line Company and the trial judge who saw the witnesses and heard their testimony probably took that into consideration. We cannot say that he erred in doing so. The disparity in the number of witnesses is not persuasive in defendants’ favor. Witnesses are not counted, but their utterances from the witness stand are weighed.
The evidence taken as a whole tends to bear out plaintiff’s contention. The testimony of one of the police officers summoned to the scene and who viewed the locus of the accident, if carefully analyzed, contradicts that of the three defense witnesses in one *289 material aspect. The defense witnesses stated that the protruding rear portion of the trailer occupied only a portion of the northbound lane, while the officer was emphatic in saying the trailer blocked that entire lane. This officer’s testimony also shows that it was the front part of the trailer that came into contact with the automobile, and after the vehicles came to rest following the crash, the automobile was located beneath the trailer just forward of its left rear wheel. It would have been impossible for plaintiff to have run into the front part of the trailer if only its rear end rested upon the highway.
The evidence that impresses us most and which speaks more eloquently than words is the photographs of plaintiff’s wrecked automobile. These show very plainly that the point of impact was on the right front of the car and the entire front thereof, with the exception of the left fender, is shorn away. The left front fender is intact without signs of apparent damage.
Now, if only the rear of the trailer had extended out into the northbound lane and was run into by the automobile, we fail to comprehend how the automobile sustained the injury aforesaid. It seems in that case that either the entire front of the car would have been damaged or that some damage would be apparent on the left front of the vehicle. The damages being located wholly on the right side lend credence to and corroborate what plaintiff said. He was passing the truck and its attached trailer on the left when the truck driver turned left, causing the trailer to contact the right front part of the automobile, and plaintiff described the result more realistically than we can, thus:
“ * * * the more it went to the left, the more it crushed my automobile. It dragged — that big trailer behind it, it was taking, coming over this way (indicating), and crashing my automobile, * *
 The left turn is one of the most hazardous maneuvers that a driver of a motor vehicle is required to perform, and one who attempts it is charged with absolute responsibility for seeing that such a turn may be safely made without untoward incident. It seems to us that the truck driver was grossly negligent in not seeing to it that the turn he was about to make could be made without interfering with traffic in the process of passing the truck and trailer. Such a turn as was unfortunately accomplished in this case is repro-bated by the highway regulatory act and also by the jurisprudence of all appellate courts of this state.
We attach no importance to the odor of whisky on plaintiff’s breath as there was no showing he was intoxicated or had ingested sufficient alcoholic content to dull his senses or render him otherwise incapable of safely operating his car. The same reasoning would apply with reference to plaintiff’s alleged fatigue resulting from having operated a taxicab for 11 or 12 hours.
The judge allowed $600 for the damages sustained by plaintiff’s car, $201.42 for hospital and medical care, and also $300 for loss of wages. As to the latter item there is some contest. The evidence, however, convinces us that plaintiff did lose time from his occupation of taxicab driver due to his injuries and we believe the allowance made therefor was justified. In challenging this item defendants contend plaintiff had suffered a serious head injury some years ago, so serious in fact that he is on 100 percent disability pay by the United States Government. That may be perfectly true, but the bona tides of the 100 percent disability is a matter which concerns plaintiff and the government, not us. We are convinced that he was able to and did carry on his occupation previous to the accident but was inhibited from doing so by the injuries.
Plaintiff was knocked unconscious, had three cuts on the head, a bruised arm, twisted back and injured leg. He lost one tooth and had several others loosened. He was hospitalized on two occasions, first *290 from March 26 to March 31, 1958, and again from May 22 through May 26, 1958. He was a bed patient at home for a month following his first hospitalization. The trial judge allowed $2,000 for these physical injuries, but we are inclined to believe that such award is inadequate and should be increased to $3,000.
For the reasons assigned, the judgment appealed from is amended so as to increase the amount thereof to the sum of $4,101.42, and as thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.